IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

-------------------------------------------------------------x
In re                                                      :
                                                           :  Chapter 11
                                                           :
TMT USA SHIPMANAGEMENT LLC, et al.,[1]   :  Case No. 13-33740
                                                           :
                                                           :  (Jointly Administered)
                                                           :
         Debtors.                                     :
-------------------------------------------------------------x

**BHP BILLITON MARKETING A.G.'S MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION FOR ENTRY OF AN ORDER DISMISSING WITH PREJUDICE THE DEBTORS' CHAPTER 11 CASES PURSUANT TO SECTIONS 105(a), 305(a), 349, AND/OR 1112(b) OF THE BANKRUPTCY CODE**

TO THE HONORABLE MARVIN ISGUR,
UNITED STATES BANKRUPTCY JUDGE:

BHP Billiton Marketing A.G. ("**BMAG**") submits this Memorandum of Law (the "**Memorandum**")[2] in Support of Emergency Motion for Entry of an Order Dismissing with Prejudice the Debtors' Chapter 11 Cases Pursuant to Sections 105(a), 305(a), 349, and/or 1112(b) of the Bankruptcy Code (the "**Motion**") (ECF No. 67) and respectfully represents:

**Preliminary Statement**

1.    The chapter 11 case filed by F Elephant Corporation ("**FEC**") should be dismissed pursuant to sections 305 and 1112(b) of title 11, United States Code (the "**Bankruptcy Code**"). Simply put, FEC has no business to reorganize. Prior to filing for chapter 11

---

[1] The Debtors in these chapter 11 cases are: (1) A Whale Corporation, (2) B Whale Corporation, (3) C Whale Corporation, (4) D Whale Corporation, (5) E Whale Corporation, (6) G Whale Corporation, (7) H Whale Corporation, (8) A Duckling Corporation, (9) F Elephant Corporation, (10) F Elephant Inc., (11) A Ladybug Corporation, (12) C Ladybug Corporation, (13) D Ladybug Corporation, (14) A Handy Corporation, (15) B Handy Corporation, (16) C Handy Corporation, (17) B Max Corporation, (18) New Flagship Investment Co., Ltd, (19) RoRo Line Corporation, (20) Ugly Duckling Holding Corporation, (21) Great Elephant Corporation, (22) TMT Procurement Corporation, and (23) TMT USA Shipmanagement LLC (collectively, the "**Debtors**").

[2] In connection with this Memorandum, BMAG also submits a Declaration of Alfredo R. Pérez with copies of the exhibits referenced in this Memorandum.

protection, FEC knew that its only source of revenue, the "F Elephant" vessel, was arrested on May 4, 2012 and subsequently sold on June 18, 2013 for approximately US $13.7 million in an auction (the "**Auction**") conducted by the Ningbo Maritime Court of the People's Republic of China (the "**NMC**"). In fact, FEC itself petitioned the NMC to conduct the Auction. In March 2013, FEC's crew abandoned the F Elephant and FEC stopped paying maintenance, bunker, and other important costs. On information and belief, the purchaser has already made three payments totaling approximately US $4.8 million. On further information and belief, upon receipt of the final payment, the NMC will deliver the F Elephant to the purchaser.

2. Pursuant to a prepetition order issued by the NMC, the sale proceeds are being deposited in an account designated by the NMC for proper distribution. In addition, prior to the Commencement Date (defined herein), the NMC accepted jurisdiction over proceedings to establish BMAG's lien rights over the F Elephant sale proceeds and to determine the priority of any other claims concerning the F Elephant (the "**Chinese Proceedings**").

3. Without the F Elephant, FEC is a shell corporation with no source of income, no employees, approximately US $5,000 cash held in a German bank account, and no business to salvage through chapter 11. Indeed, it appears that FEC cannot even afford to pay routine administrative expenses. FEC's affiliated Debtors do not appear to be in a position to offer much assistance because their cash is encumbered by liens held by various banks. Accordingly, it looks like, in all respects, FEC's ship has already sailed.

4. Regardless, even if the sale of the F Elephant is not finalized, when the Court considers the totality of the circumstances, there are still valid reasons to dismiss FEC's case. As an initial matter, FEC has no equity in the F Elephant. Prior to the Commencement Date, the English High Court entered an order (the "**English High Court Order**") granting

summary judgment in favor of BMAG against FEC for a payment default under a certain Deed of Guarantee and Indemnity (the "**Guarantee**"), which was secured by a first priority mortgage over the F Elephant.  The English High Court Order expressly requires FEC to pay BMAG US $90 million, plus over US $5 million in interest.  BMAG's secured lien over the F Elephant far exceeds any credible valuation of the F Elephant, which BMAG submits is the US $13.7 million purchase price for the F Elephant at the Auction.

5. FEC's bankruptcy case is akin to a single asset real estate case and is a two-party dispute between FEC and BMAG.  Considering the lack of any viable reorganization prospects, FEC must have filed this case and commenced the Adversary Proceeding (defined below) against BMAG as a litigation tactic to frustrate the Auction, the Chinese Proceedings, and avoid the enforcement of the English High Court Order or any other ruling from foreign courts.  Under principles of international comity, foreign courts with jurisdiction over pending matters between FEC and BMAG should be afforded appropriate deference.

6. Finally, it is evident that the Debtors sought to manufacture U.S. jurisdiction over these chapter 11 cases and venue in this district by, among other things, forming TMT USA Shipmanagement LLC ("**TMT USA**") in Texas less than two weeks before the Commencement Date and finalizing a lease for office space in Houston three days before the Commencement Date.  The Debtors have yet to provide a meaningful business reason as to why TMT USA, a newly-formed entity with no liabilities, filed for bankruptcy.  This Court also knows that the Debtors' "Houston office" is still not operational.  In addition, despite seeking numerous emergency orders from this Court since the Commencement Date, not one member of the TMT family has made it a priority to appear before this Court.  Appearing at a hearing to

contest a motion to dismiss these chapter 11 cases is self-serving and not a sign that the Debtors want to participate in the chapter 11 process and submit to the jurisdiction of this Court.

7. Chapter 11 cases like FEC's are routinely dismissed in this district under sections 305 and 1112(b) of the Bankruptcy Code. *See, e.g., In re Kickapoo Kennels, LLC*, No. 12-39321-H3-11, 2013 WL 3148656, at *1 (Bankr. S.D. Tex. June 19, 2013); *In re Tex. EMC Mgmt., LLC*, Nos. 11-40008-H3-7, 11-40017-H3-7, 2012 WL 627844, at *4 (Bankr. S.D. Tex. Feb. 24, 2012); *In re Bray & Jamison, PLLC*, No. 11-38957-H3-11, 2012 WL 28598, at *5 (Bankr. S.D. Tex. Jan. 5, 2012); and *In re Yukos Oil*, 321 B.R. 396, 410 (Bankr. S.D. Tex. 2005). In accordance with settled law in this district, and to avoid inevitable liquidation proceedings that should be adjudicated by foreign courts, BMAG respectfully requests that this Court dismiss FEC's chapter 11 case with prejudice, including dismissing claims against BMAG in the Adversary Proceeding with prejudice.

## Background

### A. Background of Dealings Between BMAG and FEC

8. Between September 2007 and March 2008, BMAG and TMT Asia Limited ("**TMTA**"),[3] the primary obligor of the debt guaranteed by FEC, were parties to various forward freight agreements ("**FFAs**"). In June 2008, BMAG and TMTA agreed to close out their respective positions under existing FFAs and entered into a certain Main Terms Agreement. Pursuant to the Main Terms Agreement, TMTA agreed to pay BMAG approximately US $211 million in 33 equal installments beginning on July 1, 2008, with interest accruing at a rate of LIBOR plus 2% per annum.

---

[3] TMTA appears to be a non-debtor affiliate of FEC.

4

9. BMAG, TMTA, and FEC subsequently entered into a certain Supplementary Settlement Agreement (the "**SSA**"), pursuant to which the parties agreed that (i) TMTA would pay BMAG US $202 million in 33 equal installments, with the first payment due at the end of July 2008, (ii) subject to a mortgage being perfected over the F Elephant, the FFAs would be terminated and the parties' respective rights would be governed by the terms of the SSA, and (iii) if TMTA defaulted on its payment obligations under the SSA, the US $212 million due under the Main Terms Agreement, together with accrued interest, would become due and payable to BMAG immediately. Ex. 1 (SSA/Guarantee) (TMT000630-TMT000648).

10. In accordance with the terms of the SSA, BMAG and FEC also entered into the Guarantee. *Id.* The Guarantee provides that FEC irrevocably and unconditionally guarantees the obligations of TMTA under the SSA up to a maximum principal amount of US $90 million. *Id.*, §§ 1.1, 1.2. BMAG's right to demand payment from FEC under the Guarantee does not require BMAG to first demand payment from TMTA under the SSA, to take any action or obtain judgment in any court against TMTA, or to enforce, or seek to enforce, anything securing TMTA's obligations under the SSA. *Id.*, §3.4.

11. FEC also executed and delivered to BMAG that certain First Preferred Liberian Ship Mortgage on "F Elephant," dated July 8, 2008 (the "**Mortgage**") to secure FEC's obligations under the Guarantee. *See* Ex. 2 (Mortgage, § 2.1) (TMT000612–TMT000629). Article 13.2 of the Mortgage states that the "Mortgage may be enforced by the Mortgagee in whichever jurisdiction the [F Elephant] may be found or in the competent courts of the Republic of Liberia or in such other jurisdiction as the Mortgagees may select." *Id.*, § 13.2. On or about July 8, 2008, the Mortgage was recorded in Book PM 60 at Page 348 (Official No. 12325) with

the Office of the Deputy Commissioner of Maritime Affairs in the Republic of Liberia. Ex. 3 (TMT000649).

12. On or about January 17, 2012, BMAG notified TMTA in writing that an event of default had occurred under the SSA and the outstanding balance (approximately US $114.4 million) was immediately due and payable to BMAG. BMAG also provided FEC written notice demanding immediate payment of US $90 million in accordance with the terms of the Guarantee. Due to TMTA's and FEC's failure to satisfy their respective payment obligations to BMAG, on May 4, 2012, the F Elephant was arrested in Ningbo, China and placed under the jurisdiction of the NMC. Ex. 4 (TMT000420); Ex. 5 (TMT000707–TMT000708).

13. In June 2012, BMAG commenced the Chinese Proceedings. In August 2012, FEC challenged the NMC's jurisdiction in the Chinese Proceedings, which was dismissed by the NMC in September 2012.

14. In June 2012, BMAG also commenced proceedings in the English High Court against FEC under the Guarantee and against TMTA under the SSA.

15. On information and belief, in October 2012, FEC filed an appeal to the Zhejiang Higher People's Court concerning the NMC's jurisdiction over the Chinese Proceedings. On further information and belief, on March 21, 2013, the Zhejiang Higher People's Court rejected FEC's appeal concerning the NMC's jurisdiction over the Chinese Proceedings.

16. On November 23, 2012, the English High Court entered the English High Court Order, which granted summary judgment in favor of BMAG against TMTA and FEC. Ex. 6 (English High Court Order). Specifically, the English High Court Order states that FEC must pay BMAG US $90 million together with accrued interest of approximately US $5.4

million and additional interest of approximately US $8,000 per day from the date of the English High Court Order until final payment. *Id.*

17. On March 11, 2013, FEC submitted an application to the NMC stating that FEC was on the edge of insolvency because the F Elephant could not generate any income because of its arrest. Ex. 5 (TMT000707– TMT000708). FEC requested that the NMC commence auction proceedings concerning the F Elephant as soon as possible. *Id.*

18. On March 19, 2013, the captain of the F Elephant issued a Declaration of Abandon Ship to the NMC. Ex. 7 (TMT000706; *see also* TMT017024–TMT017025).[4] The Declaration stated that the owner of the F Elephant (*i.e.*, FEC) was unable to provide the F Elephant "future fuel consumption and daily expenses." *Id.* The Declaration further stated that the F Elephant would be abandoned on March 20, 2013 and disclaimed liability for accidents, loss, damage, and economic losses after the abandonment date. *Id.*

19. On March 29, 2013, the NMC issued a Civil Order (the "**NMC Auction Order**") stating that (i) FEC had submitted an application requesting an auction of the F Elephant, (ii) the F Elephant had been abandoned, and (iii) based on FEC's application, the NMC was ordering the auction of the F Elephant. Ex. 8 (NMC Auction Order). The NMC Auction Order required any objecting party to submit an application for reconsideration within five days of receipt of the NMC Auction Order. *Id.* The period for any party to object to the NMC Auction Order expired in April 2013.

20. On May 24, 2013, the English High Court issued a worldwide freezing injunction against TMTA (the "**Freezing Injunction**"), which prohibits TMTA from, among other

---

[4] The Declaration of Abandon Ship is dated March 19, 2012, but on information and belief, should have been dated March 19, 2013. *See, e.g.,* email attached as part of Ex. 7 (TMT017024-TMT017025).

things, disposing or diminishing the value of assets up to US $121,350,000, whether located in England and Wales or abroad. Ex. 9 (Freezing Injunction) (TMT000586–TMT000594). The Freezing Injunction states that if TMTA disobeys the terms of the Freezing Injunction, it will be held in contempt of court and Mr. Nobu Su, who, according to papers filed with this Court, owns 100% of the equity of FEC and is the president of each of the Debtors, may also be held in contempt of court. *Id.*

**B. Background Concerning the Filing of the Debtors' Chapter 11 Cases**

21. On June 7, 2013, proposed counsel for the Debtors organized TMT USA as a Texas limited liability company by filing a certificate of formation with the Office of the Secretary of State for the State of Texas. Ex. 10 (Texas Secretary of State Filing) (TMT000416-TMT000419).

22. On June 15, 2013, the directors and/or owners of FEC and the other Debtors executed written consents expressly authorizing a filing under chapter 11 of the Bankruptcy Code. *See, e.g.*, Case No. 13-33740 (ECF No. 1 - TMT USA Voluntary Petition); Case No. 13-33749 (ECF No. 1 - FEC Voluntary Petition).

23. On June 17, 2013, the Debtors finalized the terms of a lease for office space located at 5005 Woodway Drive, Houston, Texas (the "**TMT Lease**"). As of the date of this Memorandum, the Houston office has not officially opened for business.

24. On information and belief, on June 18, 2013, the F Elephant was sold at the Action conducted by the NMC to a third party for approximately US $13.7 million. Ex. 4 (TMT000420). On further information and belief, the purchaser has made three purchase payments totaling approximately US $4.8 million, it being permissible under the applicable Chinese laws and procedures for payment to be made in installments over a period of time agreed to between the purchaser and the NMC. Pursuant to the NMC Auction Order, all sale proceeds are

deposited in a bank account designated by the NMC for proper distribution. Ex. 8 (NMC Auction Order).

25. On June 20, 2013, the Debtors commenced these chapter 11 cases (the "**Commencement Date**"). Except for the recently created TMT USA, each of the Debtors and their affiliates are foreign entities. The Declaration of Lisa Donahue in Support of Debtors' Voluntary Petitions Under Chapter 11 of Title 11 of the United States Code and First Day Motions (the "**Donahue Declaration**") (ECF No. 15), shows that the Debtors' vessels operate under foreign flags and the Debtors' secured lenders are foreign entities. *See* Donahue Decl. ¶¶ 6, 10–18; Donahue Decl. Ex. A. at 1. According to the Debtors' books and records, FEC holds approximately US $5,000 in one bank account with Commerzbank AG in Germany. Ex. 11 (TMT017118).

26. On the Commencement Date, C Whale Corporation, E Whale Corporation, F Elephant Inc., FEC, B Handy Corporation, C Handy Corporation, C Ladybug Corporation, and A Duckling Corporation (together, the "**Plaintiffs**") filed an initial Complaint to Compel Turnover and for Temporary and Permanent Injunctive Relief, Adv. No. 13-3141 (Adv. Proc. ECF No. 1) (the "**Adversary Proceeding**"). On June 21, 2013, Plaintiffs filed the Amended Complaint to Compel Turnover and for Temporary and Permanent Injunctive Relief (Adv. Proc. ECF No. 6) (the "**Amended Complaint**"). BMAG is a named defendant in the Amended Complaint. The Amended Complaint seeks, inter alia, injunctive relief and asserts a turnover claim pursuant to sections 542 and 543 of the Bankruptcy Code against BMAG solely with respect to the F Elephant. The Amended Complaint has never been properly served on BMAG.

27. On June 24, 2013, BMAG filed a limited response to the Amended Complaint, which, without waiving BMAG's right to seek dismissal of the Adversary Proceeding pursuant to Rule 12(b)(2) (lack of personal jurisdiction), Rule 12(b)(3) (improper

9

venue), Rule 12(b)(4) (insufficient process), and Rule 12(b)(5) (insufficient service of process) of the Federal Rules of Civil Procedure, among other things, objected to the relief requested in the Amended Complaint and asked the Court to dismiss FEC's chapter 11 case sua sponte (Adv. Proc. ECF No. 8).[5]

## Memorandum of Law

### I. FEC's Chapter 11 Case Should be Dismissed Under Section 1112(b) of the Bankruptcy Code

28. Section 1112(b) of the Bankruptcy Code provides:

> [O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . .

11 U.S.C. § 1112(b). "Cause" includes a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A).

29. In addition to enumerated standards under section 1112(b)(4) of the Bankruptcy Code, Courts in this district also consider the totality of the circumstances of a particular case, including whether a debtor was using the provisions of the Bankruptcy Code as a litigation tactic to (i) avoid the enforcement of court orders in another forum or (ii) gain an unfair advantage over a two-party dispute, and whether a debtor has a realistic opportunity to reorganize. *See, e.g., In re Kickapoo Kennels, LLC*, 2013 WL 3148656, at *1 (dismissing case under section 1112(b) because debtor filed chapter 11 case to delay implementation of a court order); *In re Bray & Jamison, PLLC*, 2012 WL 28598, at *5 (dismissing case under section 1112(b) because, inter alia, no proof of an ongoing business to reorganize); *In re LJH Enters.*, No. 10-34355-H3-11, 2011 WL 597034, at *3 (Bankr. S.D. Tex. Feb. 11, 2011) (dismissing case under section 1112(b)

---

[5] BMAG continues to assert its right to seek a dismissal of the Adversary Proceeding on all grounds under applicable law.

because debtor had no hope of reorganization); *In re Starmark Clinics LP*, 388 B.R. 729, 736 (Bankr. S.D. Tex. 2008) (dismissing case under section 1112(b) because essentially a two-party dispute and debtor had no hope of reorganization); and *In re Yukos Oil*, 321 B.R. at 410 (dismissing case under section 1112(b) based on totality of circumstances, including funds that created jurisdiction were transferred less than one week prior to the filing for the purpose of attempting to create jurisdiction in the United States and no evidence the Court was uniquely qualified to address matters that could be addressed in another forum).

30. Additionally, a Texas bankruptcy court considered the following factors in assessing whether a case was filed in "bad faith" for purposes of a dismissal under section 1112(b) of the Bankruptcy Code: (1) whether the debtor only has a single asset, (2) whether its assets are fully encumbered, (3) whether the debtor has any employees, cash flow and source of income to fund a plan, (4) whether the debtor has any unsecured creditors and the relative size of their claims, and (5) whether there has been a foreclosure on the debtor's assets. *See In re Briggs-Cockerham, L.L.C.*, No. 10-34222-BJH-11, 2010 WL 4866874, at *5 (Bankr. N.D. Tex. Nov. 23, 2010). As described below, there are myriad reasons to dismiss FEC's chapter 11 case with prejudice.

## A. FEC Had a Substantial and Material Diminution to its Estate and Cannot Reorganize

31. When determining whether a case should be dismissed under section 1112(b)(4)(A) of the Bankruptcy Code due to a substantial diminution of the debtor's estate "courts must look beyond a debtor's financial statements and make a full evaluation of the present condition of the estate." *See, e.g., In re Briggs-Cockerham, L.L.C.*, 2010 WL 4866874, at *5; *In re Moore Constr. Inc.*, 206 B.R. 436, 437–38 (Bankr. N.D. Tex. 1997).

32. Cause exists to dismiss FEC's chapter 11 case because the F Elephant, FEC's only source of revenue, has been sold to a third party. *See* Ex. 4 (TMT000420). As previously noted, upon the request of FEC, the NMC conducted an auction and sold the F Elephant to a third party prior to the Commencement Date. To BMAG's knowledge, as a party in interest to the Auction, it cannot prevent the NMC turning over the F Elephant to the purchaser. It is also questionable whether this Court could unwind the prepetition sale of the F Elephant. The sale of the F Elephant constitutes a substantial diminution to FEC's estate that warrants dismissal of FEC's case with prejudice. This Court need not assert jurisdiction over the distribution of sale proceeds deposited with the NMC and subject to the Chinese Proceedings.

33. Moreover, even if a sale had not occurred, FEC's case should still be dismissed because FEC has no equity in the F Elephant and is unable to generate income to sustain itself as a chapter 11 debtor. As noted above, FEC's US $90 million debt obligation to BMAG is secured by a first lien over the F Elephant. *See* Ex. 2 (Mortgage, § 2.1) (TMT000612–TMT000629). For argument's sake, BMAG submits that the best estimate of the F Elephant's current value is the sale price from the Auction, which, on information and belief, was approximately US $13.7 million. Using the US $13.7 million sale price, it is evident that FEC has no equity in the F Elephant (*i.e.*, US $90 million secured claim – approx. US $13.7 million sale price = approx. US $76.3 million deficiency claim). In addition to having no equity in the F Elephant, FEC has no employees, no cash flow, no business for more than 14 months, and only approximately US $5,000 cash on hand. Accordingly, even if FEC commenced its case with an earnest desire to reorganize it would still be quickly heading towards liquidation.

**B. FEC's Chapter 11 Case is a Two-Party Dispute with BMAG**

34. In accordance with settled case law in this district, dismissal of FEC's case is also warranted because it is a two-party dispute with BMAG. *See In re Kickapoo Kennels, LLC*, 2013 WL 3148656, at *1; *In re Bray & Jamison, PLLC*, 2012 WL 28598, at *5; *In re LJH Enters,*. 2011 WL 597034, at *3; and *In re Starmark Clinics LP*, 388 B.R. at 736. BMAG is by far FEC's largest secured and unsecured creditor with a US $90 million lien over the F Elephant; and, in fact, may be FEC's only creditor.

35. Rather than defending itself before the NMC in the Chinese Proceedings, the undisputed facts show that (i) the Debtors' senior management attempted to manufacture U.S. jurisdiction over these chapter 11 cases and venue in this district by forming TMT USA less than two weeks before the Commencement Date, (ii) approximately one week after the formation of TMT USA, the Debtors' senior management and owners executed written consents authorizing the commencement of these chapter 11 cases, (iii) after such written consents were executed, the Debtors finalized the TMT Lease, and (iv) proposed counsel to the Debtors voluntarily wrote-off earned fees and expenses so that the Debtors could argue that they held assets in the United States. In addition, it appears that a retainer paid to AlixPartners, which was used as evidence at the first day hearing to establish that TMT entities were "debtors" under section 109(a) of the Bankruptcy Code, was intended to satisfy fees and expenses due prior to the Commencement Date, and not to secure payment for future performance. *See* Ex. 12 (AlixPartners Emails) (TMT001030–TMT001031; TMT001036–TMT001037; TMT001056–TMT001059).

36. Because FEC has no business to reorganize, the inescapable conclusion is that FEC filed a chapter 11 case and commenced the Adversary Proceeding against BMAG to frustrate the Auction, the Chinese Proceedings, and avoid the enforcement of the English High

13

Court Order or any other rulings issued by foreign courts, none of which serves as a good faith purpose for invoking bankruptcy protection.[6]

37. This point is further underscored by the fact that FEC, as a plaintiff in the Adversary Proceeding, requested that this Court issue preliminary and permanent injunctions against BMAG—despite knowing it requested the Auction and that the period for any party to contest the NMC Auction Order expired prior to the Commencement Date. The rulings of foreign courts must be respected. FEC should not be allowed multiple bites at the apple by requesting relief in various venues across the globe.

## C. FEC's Chapter 11 Case Constitutes a "Bad Faith" Filing

38. Finally, FEC's bankruptcy filing is a textbook example of "bad faith" applying the following factors enumerated in the *Briggs* case: (1) whether the debtor only has a single asset, (2) whether its assets are fully encumbered, (3) whether the debtor has any employees, cash flow and source of income to fund a plan, (4) whether the debtor has any unsecured creditors and the relative size of their claims, and (5) whether there has been a foreclosure on the debtor's assets. *See, e.g.*, *In re Briggs-Cockerham, L.L.C.*, 2010 WL 4866874, at *5. As described above, FEC has no business to rehabilitate, its primary asset is subject to the Auction—and in any event, is properly before the jurisdiction of the NMC. On information and belief, FEC has no employees, no operating cash flow, virtually no cash, cannot pay its administrative expenses, and cannot obtain funding to pay BMAG US $90 million to release the

---

[6] BMAG also continues to evaluate issues concerning the filing of these chapter 11 cases and the non-bankruptcy litigation captioned *Vantage Drilling Company v. Hsin Chi Su a/k/a Nobu Su*, formerly before the 295th District Court of Harris County, Texas, Cause No. 2012-47755, and currently pending before the United States District Court for the Southern District of Texas, Civil Action No. 4:12-CV-03131. Ex. 13 (Vantage Petition). In the *Vantage* litigation, Mr. Su is being sued for breach of fiduciary duty, fraud, fraudulent inducement, negligent misrepresentation, and unjust enrichment in connection with certain transactions involving non-debtor entities. One of the non-debtor entities at issue in the *Vantage* litigation was allegedly the source of the retainer used by TMT to establish jurisdiction. Ex. 14 (TMT000926-TMT000927). BMAG reserves all rights with respect thereto.

F Elephant from arrest. BMAG is also FEC's largest secured and unsecured creditor, and perhaps its only creditor, and it will be impossible to formulate a reorganization plan without BMAG's consent. Accordingly, FEC's bankruptcy case should be dismissed pursuant to section 1112(b) of the Bankruptcy Code.

## II. FEC's Chapter 11 Case Should be Dismissed Under Section 305 of the Bankruptcy Code

39. This Court should also dismiss FEC's case under section 305(a) of the Bankruptcy Code, which provides that a Court may dismiss or suspend a chapter 11 case if "the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1). Suspension is warranted under section 305 of the Bankruptcy Code when the debtor has limited or no contacts with the United States and the reorganization most properly belongs in the jurisdiction of a foreign court. *See, e.g.*, *In re Tex. EMC Mgmt., LLC*, 2012 WL 627844, at *3–4 (dismissing case under section 305 that did not appear to have been filed in order to reorganize debt or to provide for an orderly disposition of assets); *In re First Fin. Enters., Inc.*, 99 B.R. 751, 754–55 (Bankr. W.D. Tex. 1989) (dismissing case under section 305 and section 1112(b)); *In re Privada, Inc.*, No. 07-10940 FRM, 2008 WL 4692372, at *4 (Bankr. W.D. Tex. Oct. 22, 2008) (dismissing case under section 305 because better served in another forum with pending proceedings concerning assets of the debtor).

40. As established above, there is no credible evidence establishing that FEC filed a chapter 11 case to reorganize its debt. In addition, this case is a two-party dispute between BMAG and FEC and resolution of their issues is already being addressed in foreign courts. *See In re First Fin. Enters., Inc.*, 99 B.R. at 754–55 (dismissing case under section 305 because debtor filed the case "as a litigation tactic" and under section 1112(b) because there was no reasonable likelihood of rehabilitation); *In re Tex. EMC Mgmt., LLC*, 2012 WL 627844, at *3–4 (same); *In re Fast Foods*

15

*Props., Ltd. #1*, 5 B.R. 539, 540 (Bankr. C.D. Cal. 1980) ("It is obvious for me that this Chapter 11 case was filed solely for the purpose of frustrating the enforcement of the sale provision under [the] deed of trust and that the Chapter 11 case should be dismissed . . . . [Section] 305 does not restrict my power to dismiss, but rather enlarges it."). The United States is a not proper forum for FEC and this Court should dismiss FEC's chapter 11 case with prejudice.

## Conclusion

41. BMAG respectfully requests that the Court (i) grant the Motion and dismiss FEC's chapter 11 case with prejudice, including dismissing claims against BMAG in the Adversary Proceeding with prejudice and (ii) grant BMAG additional relief as is just and appropriate.

Dated: July 14, 2013
      Houston, Texas

    */s/ Alfredo R. Pérez*
Alfredo R. Pérez
Texas Bar No. 15776275
E-mail: alfredo.perez@weil.com
Weil, Gotshal & Manges LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

*Attorneys for BHP Billiton Marketing A.G.*

**Certificate of Service**

        This is to certify that a true and correct unredacted copy of **BHP Billiton Marketing A.G's Memorandum of Law in Support of Emergency Motion for Entry of Order Dismissing with Prejudice the Debtors' Chapter 11 Cases Pursuant to Sections 105(a), 305(a), 349, and/or 1112(b) of the Bankruptcy Code** was emailed to the following parties on July 14, 2013:

- evan.flaschen@bgllp.com
- trey.wood@bgllp.com
- robert.burns@bgllp.com
- jason.cohen@bgllp.com
- ecolumbus@winstead.com
- whsu@winstead.com
- jmelko@gardere.com
- pmclauchlan@gardere.com
- csnow@gardere.com
- david.parham@bakermckenzie.com
- rosa.shirley@bakermckenzie.com
- ckelley@mayerbrown.com
- FHyman@mayerbrown.com
- MLotito@mayerbrown.com
- CWolfe@KelleyDrye.com
- ashmead@sewkis.com
- Mario_Rios@txs.uscourts.gov

                                                               */s/ Christopher M. Lopez*
                                                               Christopher M. Lopez